## 19455

The STATE, Respondent, v. Lawrence VICE, Jr., Appellant
(190 S. E. (2d) 510)

*Messrs. Harvey M. Spar* and *Leonard L. Long, Jr.,* of *Long & Townsend,* Charleston, *for Appellant,*

*Messrs. Robert B. Wallace, Sol.,* and *A. Arthur Rosenblum, Asst. Sol.,* of Charleston, *for Respondent,*

*Messrs. Harvey M. Spar,* and *Leonard L. Long, Jr.,* of *Long & Townsend,* Charleston, *for Appellant, in Reply,*

July 18, 1972.

LEWIS, Justice.

Appellant, Lawrence Vice, Jr., was convicted of voluntary manslaughter under an indictment charging him with the murder of one Robert Farrow, and received a sentence of twenty (20) years. It is argued in this appeal that the trial judge erred (1) in admitting testimony relative to blood spots found in appellant's apartment and pictures taken therein during an entry by the officers without a search warrant; (2) in admitting in evidence a recording of appellant's voice; and (3) in refusing a motion for a directed verdict of not guilty.

Robert Farrow, a colored male, was found dead, lying in the yard, near the porch of the house where he rented a room, at 76 George Street, in Charleston, South Carolina. He was fully clothed and was saturated with blood over his chest and down his left leg. The body was discovered by the newspaper delivery boy about 7:15 a. m., Sunday, March 16, 1969, and police arrived at the scene about 7:25 a. m.

As the result of an autopsy, it was determined that the death occurred between midnight and six o'clock, a. m. on March 16, 1969, from four stab wounds to the chest one of which entered the heart.

The deceased lived in a room on the first floor of a two story house, where several others rented rooms or apartments. Appellant lived on the second floor. The investigating officers were able to locate all of the occupants of the building, except appellant, who disappeared and was not located until he was surrendered to the police by his attorney on March 18, 1969, two days after the body of the deceased was found.

Appellant made no statements concerning the crime and did not testify at the trial. There were no eye witnesses and the State relied largely upon circum-

stantial evidence to prove the charge. Since one of the issues involves the sufficiency of the evidence to sustain the conviction, we must view the facts and circumstances surrounding the incident in the light most favorable to the State. This rule governs our review of the testimony.

The room of the deceased opened onto a porch, from which a stairway led to the second floor. During the night of March 15,1969, the deceased, who was intoxicated, got into an argument with an adjacent roomer. Shortly thereafter, the deceased was heard arguing and tussling someone near the porch steps. A witness stated that a voice, which sounded like that of appellant, said "he was going upstairs and coming back." This witness then heard the sound of someone going upstairs to the second floor and coming down, followed by more tussling, and then silence. The body of the deceased was found the next morning lying on the ground, near the porch where the witness had heard the argument and tussling the night before.

On March 16th, at about 1:21 a. m., an anonymous telephone call was received at police headquarters. The voice was described as that of a colored male and reported: "I'm down at 76 George Street, downstairs, and a man has been seriously crushed in the damned stomach." This call was automatically recorded. The report was investigated by the police shortly thereafter but no body was found. An officer, who knew appellant, testified that, in his opinion, the voice recorded in the anonymous phone call was that of appellant.

When the officers were subsequently called to the scene, they found blood on the ground, and on the porch near the door to deceased's room. The deceased was crippled and used a walking cane. His hat, walking cane, and medallion showing "praying hands" were found on the porch near a spot of blood. In addition, blood was found on the stairway leading to the second floor. A small neck chain was also found on the stairway.

There was a screen door at the head of the stairway, leading into a hallway from which only the rooms of appel-

lant and his landlady could be entered. The screen door was locked from the outside with a hasp and padlock. Blood was found on this hasp and lock. Upon entering the hallway, blood spots were found just outside the door to appellant's room. His room was locked from the outside by means of a hasp and padlock, to which only appellant and the landlady had keys.

Appellant customarily wore a neck chain with a "praying hands" medallion and was seen wearing the medallion about three weeks prior to the present incident, at which time he also had a four inch pocket knife in his possession. The medallion was similar to the one found at the scene of the crime.

When appellant was surrendered to the police, he was not wearing the chain and medallion; blood was found on keys taken from his person; and there was a bruise on his face and a scratch on his arm which had scabbed over.

Scrapings from under the fingernails of the right hand of the deceased revealed the presence of human blood, but insufficient in quantity to be typed. Hair samples from the appellant and the deceased were found to be Negro in origin, but could not be otherwise identified.

Blood samples were taken from the deceased; from the blood spots on the porch, stairway, hallway and keys taken from appellant and from appellant's body. All the blood was found to be human blood, type O.

Appellant tried to get his landlady to testify at his trial that she sent him downstairs the night of the incident to "quiet some quarrel," but she refused to do so.

When the officers traced the blood spots from the body of the deceased to the door of appellant's locked room, they procured the assistance of appellant's landlady who unlocked the door. Upon gaining entrance, blood spots were also found in the appellant's room. Scrapings were taken from these blood spots and pictures were made of the room, which were later admitted in evidence over appellant's objection.

No search warrant was obtained by the officers before entering and appellant contends that the evidence obtained as a result of this search of his room was inadmissable. This presents the first issue for determination.

The evidence procured from the room of appellant was obtained as the result of an unlawful search and was therefore inadmissible. The search was clearly not incident to an arrest and the State does not now rely upon that theory. Rather, the State relies upon the proposition, as set out in *Warden v. Hayden,* 387 U. S. 294, 87 S. Ct. 1642, 18 L. Ed. 782, that the exigencies of the situation made the search of the room of appellant imperative.

The facts of this case do not bring it within the rule applied in Warden. There a robber was followed from the scene of the robbery to a house. This information was relayed to the police who arrived five minutes later. They were admitted to the home by Mrs. Warden. The defendant was found feigning sleep and was arrested. Certain incriminating evidence was found in various places in the house and was admitted in evidence. The United States Supreme Court held that the entry and search without a warrant was permissible because, under the circumstances of that case, "the exigencies of the situation made that course imperative."

In this case, the officers were engaged in the investigation of a homicide about five hours after discovery of the dead body . Blood spots were traced from the body to the door of the room in which appellant lived. There was nothing to creat even a suspicion that appellant was in the room. In fact, it was quite evident that he was not there for the door was locked with a padlock from the outside. Speed was not essential. There was simply no circumstance upon which to base a conclusion that the exigencies of the situation required dispensing with the necessity of a warrant to search appellant's room. The lower Court, therefore, was in error in admitting the evidence obtained as a result of the search without a warrant. *Stoner v. California,* 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. (2d) 856.

The State argues, however, that even if the foregoing evidence was inadmissible, it was harmless. We disagree. Testimony as to the presence of blood in appellant's room after the witnesses had traced the blood spots from the dead body to his door, could hardly be held to be harmless. A new trial must, therefore, be granted on this ground.

Although a new trial is granted, the remaining questions are such that they must be decided. The first concerns the admissability of a recording of the defendant's voice.

As previously stated, an anonymous telephone call was made to police headquarters on the morning of the victim's death, advising that a man had been "seriously crushed in the damned stomach" at 76 George Street. The call was automatically recorded. This recording was introduced in evidence along with testimony of an officer that in his opinion it was the voice of appellant.

Prior to the trial, the State served a notice upon appellant and his counsel that the appellant would be required to speak over a telephone connected with the police telephone and recording device so that a recording of appellant's voice could be obtained. The purpose of such a recording was to compare it with the voice of the anonymous telephone caller previously recorded on the night of the crime Appellant refused to speak into a telephone so that a recording of his voice could be made.

During the trial, when the original recording of the anonymous caller was introduced, the court, at the request of the State, required appellant, during a court recess and in the absence of the jury, to speak into a telephone so that his voice could be recorded on the same police dictaphone which recorded the voice of the anonymous caller. The recording so made was admitted in evidence, over appellant's objection and played to the jury, so that they could compare appellant's known voice with that of the voice on the prior recording, for purposes of identification. Although the voice recording was made during the progress of the trial, it was made out

of the presence of the jury and, for all practical purposes, was tantamount to a pretrial requirement.

Appellant contends that the admission in evidence of the court directed voice recording violated his privilege against self-incrimination and deprived him of due process.

Questions arising from the requirement that a defendant in a criminal case demonstrate his voice for identification purposes are considered in an Annotation in 24 A. L. R. (3d) 1261. The annotation points out that the courts have generally held that a defendant may not refuse to demonstrate his voice for identification purposes on the ground that his privilege against self-incrimination would be violated

■ The requirement that appellant speak into the telephone so that his voice could be recorded for identification purposes did not violate his privilege against self-incrimination. "He was required to use his voice as an identifying physical characteristic not to speak his guilt." *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 1930, 18 L. Ed (2d) 1149, 1155. *State v. McKenna,* 94 N. J. Super. 71, 226 A. (2d) 757.

Neither did the admission of the voice recording deprive appellant of due process. The recording was made of appellant's voice while speaking into the telephone and on the same machine that recorded the voice of the anonymous caller. The statement which appellant was required to make and the circumstances surrounding the two recordings were such as to afford the jury a reasonable basis for comparison of the voices recorded. There is nothing to indicate that the admission of the recording deprived appellant of due process or in any way violated his constitutional right to a fair trial.

■ Finally; appellant maintains that the evidence was insufficient to establish his guilt and that his motion for a directed verdict of not guilty should have been granted by the trial judge. In considering this question, the evidence obtained as a result of the unlawful search of appellant's room must, of course, be disregarded.

The testimony upon which the State relied to prove the charge against appellant has been set forth. Further review of that testimony would serve no useful purpose. We are convinced, however, that the competent evidence and the reasonable inferences to be drawn therefrom were sufficient to sustain the guilt of appellant and required that the issues be submitted to the jury for determination.

The judgment of the lower court is accordingly reversed and the cause remanded for a new trial.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.