COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Beales and Senior Judge Annunziata
Argued at Chesapeake, Virginia


JOSEPH T. WEST

                                                              OPINION BY
v.        Record No. 1486-08-1                    JUDGE RANDOLPH A. BEALES
                                                              JULY 14, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                            Wilford Taylor, Jr., Judge

            Timothy G. Clancy (Moschel & Clancy, P.L.L.C., on briefs), for
            appellant.

            Rosemary V. Bourne, Assistant Attorney General (William C. Mims,
            Acting Attorney General; Eugene Murphy, Senior Assistant Attorney
            General, on brief), for appellee.


        Joseph T. West (appellant) entered conditional guilty pleas to charges of maiming, breaking

and entering, possession of burglary tools, aggravated sexual battery, object sexual penetration, and

attempted rape, preserving his right to appeal the trial court's denial of his motion to suppress

evidence collected by the police after they entered his home.[1]  The trial court then convicted

appellant of these charges and sentenced him to life in the penitentiary plus thirty-one years, with

thirty-one years suspended.  Appellant appealed to this Court, arguing that the police entered his

home without a warrant, without probable cause, and without exigent circumstances that would

justify a warrantless entry.  We find the trial court did not err in denying appellant's motion to

suppress the evidence collected by the police after they entered his home.


_____

        [1] The trial court did grant appellant's motion to suppress the statement that he gave to the
police after he was arrested.  The Commonwealth did not appeal that ruling.

Given our standard of review for motions to suppress, we must consider the facts in this case in the light most favorable to the Commonwealth, the party that prevailed below. See Al-Karrien v. Commonwealth, 38 Va. App. 35, 41-42, 561 S.E.2d 747, 750 (2002). However, we review *de novo* legal determinations such as the trial court's finding that probable cause existed. Id. We discuss here only the facts relevant to the issue before us.

## I. Background

Detective Snyder was called to the home of a 94-year-old woman, Mrs. M,[2] regarding a burglary and sexual assault. He arrived at approximately 6:15 a.m. Mrs. M told the police that she awoke during the night and discovered that a man was in her room. He attempted to rape her. During the struggle, Mrs. M bit her assailant on the lip when he tried to kiss her. She also bit his ear and his finger. Detective Snyder observed extensive bruising and cuts on Mrs. M's upper body and that she had blood on her. However, she had not been raped.

When Detective Snyder asked the victim if she could identify the man who broke in and assaulted her, she said no. However, she described him as wearing light-colored jeans, a head covering, a t-shirt, and perhaps "some kind of leather glove." She also told Detective Snyder that, "Joe came to mind, but she did not know why." Appellant, or "Joe" as Mrs. M called him, had lived in the house behind Mrs. M's residence for over twenty years. Mrs. M then added that she did not believe appellant could be her attacker, given how long they had been neighbors, although she had heard from another neighbor that he probably was involved in a crime committed in their neighborhood.

Based on the victim's statement that "Joe" came to mind as the perpetrator, several policemen, including Detective Snyder, went to appellant's home at 7:38 that same morning. After answering their knock, appellant initially hid behind the front door so that the police could

---

[2] We refer to the victim as "Mrs. M" in order to protect her privacy.

not see his entire body. Even so, Detective Snyder noticed a fresh scratch on appellant's face when he answered the door. When the detective explained that they were investigating an incident in the neighborhood, appellant showed his face more fully, and the detective saw appellant's "lip was cut and had not scabbed over."[3]

At this point, appellant began to shut his door without asking any questions about the police's investigation. Detective Snyder put his hand out to stop the door and explained to appellant that they wanted to come into the house. Appellant then opened the door, and the officers went in.[4] Once the officers were inside appellant's home, they observed an injury to the front and back of appellant's ear.[5] They also discovered that appellant's mother was in the house.

The police arrested appellant, who was in his underwear. Appellant asked his mother to get him some pants to wear to the police station. She went into his bedroom and then returned to the living room holding a pair of jeans that had a "dark stain" on them that appeared to be blood. The police took the jeans from appellant's mother, allowed him to get another pair of pants, and then took appellant to the police station. The police did not obtain a search or arrest warrant before they entered the house, arrested appellant, and seized the jeans.[6]

---

[3] During the suppression hearing, the Commonwealth presented pictures of these injuries.

[4] The Commonwealth does not argue that appellant invited the police to enter the home.

[5] Detective Snyder was not clear in his testimony as to when he first saw the lacerations on appellant's ear – whether before or after the detective stopped appellant from closing the front door.

[6] The officers also looked around the house to ensure that appellant's mother was the only other person in the residence. When appellant was taken from the house, Detective Snyder ordered another officer to remain at the residence and "fr[ee]ze the scene" while the detective requested a search warrant from the magistrate. The magistrate granted that request, and the police then searched the house.

II.  Analysis

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted).

> "[At] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  Silverman v. United States, 365 U.S. 505, 511 [(1961)].  In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

Payton v. New York, 445 U.S. 573, 589-90 (1980) (most alterations in original).

Appellant argues that, in order to fall within one of those exceptions, the police here needed to have probable cause and also needed exigent circumstances to justify their entry into his home.  He contends they had neither.  We agree with appellant that the police needed both probable cause and exigent circumstances to enter without a warrant.  See Welsh v. Wisconsin, 466 U.S. 740, 749 (1984); Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 753 (1985).  However, we find that both probable cause and exigent circumstances existed here.

First, the police had probable cause to believe appellant had committed the assault on Mrs. M.

> Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

The determination of probable cause by police officers depends upon "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" . . . .

Jefferson v. Commonwealth, 27 Va. App. 1, 12, 497 S.E.2d 474, 479 (1998) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (citations omitted)).  Here, Mrs. M told the detective that appellant "came to mind" as her attacker.  She had known appellant for over twenty years, and he lived very close to her house.  Although she told the officer that she did not really believe appellant could have done such acts, the detective could reasonably conclude that appellant "came to mind," when Mrs. M thought about her attacker, because he actually was her assailant.

"In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control."  Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).  When the police arrived at appellant's house on that same morning as the attack on Mrs. M, and appellant opened his door, Detective Snyder observed fresh injuries to appellant's lip and face – injuries that the detective believed were consistent with those that Mrs. M said she had inflicted on her assailant.  In addition, when the police told appellant that they were investigating an incident in his neighborhood, rather than expressing concern, appellant started to close his door without asking any questions.  Based on the totality of the circumstances – the victim's identification of appellant as the possible assailant, appellant's proximity to the victim's house, appellant's odd behavior when answering the door, and the fresh injuries on appellant's lip and face – the police had probable cause to conclude that appellant was the person who assaulted Mrs. M.

Second, exigent circumstances existed in this case, allowing the police to enter appellant's home without a warrant in order to conduct further inquiries and to arrest him.

Although in most situations, the police must obtain a search or arrest warrant in order to justify entry into a home, some situations give rise to exigent circumstances which will

> justify as reasonable a warrantless entry into a dwelling, a search of the interior, a seizure of contraband, and an arrest of those found in possession of it. Such warrantless entries into dwellings, followed by searches, seizures, and arrests therein, however, are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances.

Verez, 230 Va. at 410, 337 S.E.2d at 752-53.

When considering whether exigent circumstances exist, courts must examine all of the specific circumstances that the police faced in a particular case at the time that they entered the particular home. As the Virginia Supreme Court explained in Verez:

> No court has, to our knowledge, attempted to formulate a final and comprehensive list of all exigent circumstances which might justify a warrantless entry [or arrest], but some of those considered relevant have been: (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

230 Va. at 410-11, 337 S.E.2d at 753.

Based on an examination of the entire record before us, we find that sufficient exigent circumstances existed in this case that justify the police's entry into appellant's home without a warrant. Here, the officers were investigating serious crimes, involving violent sexual assault and home invasion. See Welsh, 466 U.S. at 751-52 (explaining that the seriousness of the alleged offense is an important factor). In addition, although the crimes here did not involve a

firearm, the perpetrator had violently attacked a 94-year-old woman as she lay in her bed after he had used something sharp to cut the screen out of the window and enter her home. Therefore, the danger to the community from this perpetrator continued if the police did not enter his house and quickly act to restrain the suspect. Also, because appellant lived behind Mrs. M's house, he could easily observe that the police were actively investigating the crime, which could have prompted him to destroy evidence or to flee.

Finally, maiming and the sexual assault crimes that the police were investigating potentially involved DNA evidence. Detective Snyder knew, based on his investigation that morning, that both the victim and the perpetrator had been cut or bitten during the attack and attempted rape. Detective Snyder had seen blood on the victim, indicating that blood would most likely also be found on her assailant, given the facts in this case. In addition, DNA from the victim's saliva was also likely to be found on her assailant where she had bitten him during the attack. Similarly, the police could also expect to recover other DNA evidence from the clothing of the perpetrator, given the perpetrator maimed the victim and committed object sexual penetration of her.[7] This type of physical evidence is easily destroyed, by simply washing a pair of pants or taking a shower. Therefore, it was critical for the officers to gain control of the situation and arrest appellant once they had probable cause to believe he committed the crimes. Otherwise, appellant could easily destroy the biological evidence of his guilt while the police proceeded to get a search or arrest warrant. See United States v. Reed, 935 F.2d 641, 643 (4th Cir. 1991) ("Exigent circumstances can arise when evidence might be destroyed before a search warrant could be obtained and police need not produce concrete proof that the evidence was on the verge of destruction."); State v. Hardin, 359 N.W.2d 185, 189 (Iowa 1984) ("From the bloody and disheveled condition of the victim, the police reasonably expected to find . . . the

---

[7] As noted previously, appellant pled guilty to these crimes.

victim's hair in defendant's beard, her blood on his body, and meaningful scrapings underneath his fingernails.  Defendant could have extinguished much of that incriminating evidence merely by showering, an additional factor supporting the warrantless immediate arrest."); State v. Welker, 683 P.2d 1110, 1114 (Wash. Ct. App. 1984) (noting that experienced officers know that "important 'trace evidence,' such as hair, fibers, bodily secretions, scratches and bite marks, is usually present in rape cases and that it is transient or short lived.  If the attacker could elude capture long enough, this trace evidence could be washed or combed away and, in this case, the freshness of the incriminating scratches would be lost."); cf. Schmerber v. California, 384 U.S. 757, 770-71 (1966) (finding "the attempt to secure evidence of blood-alcohol content" without a warrant was reasonable incident to Schmerber's arrest, given the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence'"); contrast State v. Vice, 190 S.E.2d 510, 512 (S.C. 1972) (holding that, as the evidence proved Vice was not in his rented room, "[t]here was simply no circumstance upon which to base a conclusion that the exigencies of the situation required dispensing with the necessity of a warrant to search appellant's room").

Thus, based on all of these factors, we conclude both probable cause and exigent circumstances existed here, justifying the warrantless entry into appellant's home.

III.  Conclusion

We find the trial court did not err when it denied appellant's motion to suppress the evidence collected at the time of his arrest, and, therefore, we affirm his convictions.

Affirmed.