## CIRCUIT COURT OF THE CITY OF RADFORD

Commonwealth of Virginia

v.

Taj Alexander Mahon-Haft

September 20, 2013

BY JUDGE JOSIAH T. SHOWALTER, JR.

Before the Court is the Defendant Taj Alexander Mahon-Haft's Motion To Suppress Evidence. After considering Defendant's Memorandum and Plaintiff's Response, hearing the arguments of the parties, and considering all of the evidence, the Court hereby denies Mahon-Haft's Motion To Suppress Evidence.

### Issues

Taj Alexander Mahon-Haft wishes to suppress the evidence obtained by the Commonwealth of Virginia ("Commonwealth") during the search of his home by police officers. The Defendant believes the evidence should be suppressed because no warrant was obtained by the officers before entering his house and there was not probable cause for the officers to make a warrantless entry under Probable Cause Exigent Circumstances and/or the Community Caretaker Exception.

### Factual Findings

The Court makes the following factual findings.

The Court will note that, procedurally, a preliminary hearing was held on June 5, 2013; subsequently, the Motion To Suppress was heard by the Court on July 2, 2013. The defense argued that certain evidence, or testimony, was not presented at the preliminary hearing held in the Radford City Juvenile and Domestic Relations Court. The right to a preliminary hearing is recognized by Virginia Code § 19.2-218, 1950, as amended. The preliminary hearing is conducted by the Juvenile and Domestic Court (or

district court) to determine whether there is "reasonable ground to believe" that the accused committed a felony. Virginia Code § 19.2-218. The preliminary hearing is not a discovery vehicle nor the commencement of trial for double jeopardy purposes. In other words, the evidence presented by the Commonwealth is a *prima facie* case to charge the defendant. *Highsmith v. Commonwealth*, 25 Va. App. 434, 489 S.E.2d 239 (1997). In a Motion To Suppress, the Commonwealth bears the burden to prove the admissibility of evidence seized by a preponderance of the evidence to justify the search as an exception to the warrant requirement Although carrying somewhat of the same burden, the Commonwealth's evidence as to each hearing is not mutually bound together as the exact same hearing.

In the late afternoon of December 22, 2012, three days before Christmas and while Radford students were on winter break, Michael Zimmerman, a contractor who was building a house by the Mahon-Haft house, phoned Sergeant Kenneth Ford, a police officer with Radford City, because he observed side doors open (both storm door and interior solid door) at Mahon-Haft's house. Mr. Zimmerman had been engaged in building a house across the street and had noticed no activity or occupants at the Mahon-Haft house in the days prior to December 22, 2012.

Sergeant Ford then called the Radford City Police dispatch center, and, at around dusk, Officer Ben Mullins arrived at the scene. While waiting for Corporal Stultz to arrive as back-up, Officer Mullins noted a car with foreign license plates, from Washington State, parked in the driveway, as well as the open doors to the Mahon-Haft house. Officer Mullins stated he could see into the house from the porch and he knocked on the door and yelled in to see if anyone was there.

Corporal Kayla Stultz arrived on the scene shortly thereafter, where she observed Officer Mullins on the side porch with the open doors and joined him there. Both officers observed that there were two doors wide open on the side porch and facing in opposite directions. The metal screen door was opened out, while the wooden interior door was opened in, unusual given the time of year, December. Both officers then yelled into the house, stating they were part of the Radford Police Department and for the occupants to make themselves known, but there was no response.

Officer Mullins looked into the house and could observe the kitchen area from outside the home. He described the home as messy, unorganized, and in disarray. Corporal Stultz noticed that a kitchen cabinet door was open and that two cats were also present. Officer Mullins testified that the City of Radford experiences a dramatic increase in burglaries during the holidays. Radford police have resorted to utilizing special assignment undercover officers who work extra patrols in residential areas during holidays and college breaks. Though there was no evidence of broken glass or of the doors being forced open, Corporal Stultz explained that burglaries without

visible signs of forced entry are common and often the victims simply do not lock their doors.

Corporal Stultz testified that the officers were "concerned for the well-being of the possible occupants of the residence that could possibly still be inside, and also to protect their property where there was a threat to it." The officers subsequently proceeded to sweep the house for people.

During the search, Officer Mullins entered the upstairs rear left room of the residence where he observed, in plain view, a green leafy plant material which he believed to be marijuana; a smoking device; a mirror; a rolled up one dollar bill; a razor blade; and a white powdery substance in the form of a line on a flat, nonporous surface. Corporal Stultz secured the residence while Officer Mullins applied for a search warrant. Numerous items believed to be drugs and drug paraphernalia were seized, along with graphic images depicting child pornography.

Mahon-Haft reported that he was in Maryland on December 22, 2012, and that he had been a victim of a burglary. He actually filed a police report for $1,500 worth of stolen jewelry resulting from such. He further described his home as being "ransacked" during the break-in.

*Opinion*

The Fourth Amendment grants certain privileges to citizens, one being the right to privacy in his own home without government intrusion. *Kyllo v. United States*, 533 U.S. 27, 31, 150 L. Ed. 2d 94, 121 S. Ct. 2038 (2001). "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated." U.S. Const., Amend IV. "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984). When determining if the entry into the home by police officers was warranted, the Court must look to the reasonableness of the search, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court*, 387 U.S. 523, 528-29, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967).

As stated previously, the officers who searched Mahon-Haft's house upon arriving at the scene did not have a search warrant for said entry into his home. As there was no valid search warrant in the current case, the Court must determine if the search was valid under Probable Cause Exigent Circumstances and/or the Community Caretaker Exception.

A. *Probable Cause Exigent Circumstances Exception*

Absent exigent circumstances, the "threshold [of a dwelling] may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). A warrantless entry is reasonable within the meaning of the Fourth Amendment when police have probable cause together with the required exigent circumstances. *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984); *West v. Commonwealth,* 54 Va. App. 345, 353, 678 S.E.2d 836, 840 (2009); *Shannon v. Commonwealth,* 18 Va. App. 31, 33, 441 S.E.2d 225, 227 (1994).

The Supreme Court has recognized categories of exigent circumstances, where a warrantless search is appropriate, which includes where there is a clear showing of probable cause at the time of entry. *Verez v. Commonwealth,* 230 Va. 405, 337 S.E.2d 749 (1985). Probable cause exists if, "at that moment, the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). It is important to remember that "police officers are not required to possess either the gift of prophecy or the infallible wisdom that comes with hindsight. Their conduct in making a warrantless search must be judged by the circumstances confronting the officers at the time they act." *Hill v. Commonwealth,* 18 Va. App. 1, 3, 441 S.E.2d 50 (1994).

In *Hill v. Commonwealth,* the Court determined justifiable exigent circumstances existed in that the house may have been the subject of a burglary when a neighbor reported an open front door when the occupant had been out of town for two days. 18 Va. App. 1, 3, 441 S.E.2d 50 (1994). As it is the duty of an officer to determine if there was a burglary and prompt action was necessary as the burglary could have been in progress, there was sufficient probable cause. At no point did their search exceed the scope of their duties, as all evidence obtained was in plain view.

Similar to *Hill,* the officers that arrived on the scene at Mahon-Haft's house residence had probable cause to search the house. Officer Mullins arrived at the scene first, after being alerted to an open door at the side of the house via dispatch, originating from a neighboring contractor who was familiar with the lack of activity at the residence at issue. Upon arriving, Officer Mullins observed that there were two doors wide open, both facing in opposite directions. Further, while securing the premises, the officer noticed a car parked on the driveway with a Washington State license plate. When Corporal Stultz arrived and joined Officer Mullins on the porch where the two doors were wide open, both officers yelled into the house, announcing themselves as being associated with the Radford Police Department, but there was no response. In addition, from the outside porch, it was possible to see an open cabinet in the kitchen, which Corporal Stultz found suspicious considering there were cats roaming around

inside. When taking into account that this event occurred three days before Christmas, a time, based on the officers' testimony, that there is a rise in crime in Radford because the college students are gone on holiday, the decision by the officers to search the house seems justifiable. Also, this is in conjunction with the two doors open in winter, which is unusual. Probable cause existed for Officer Mullins and Corporal Stultz to reasonably suspect that a burglary had occurred or was in the process of occurring, and it was therefore necessary to search the house. Given all the circumstances, the officers were justified in entering the dwelling, an action that was later affirmed by the Defendant himself.

The present case differs from that of *Kyer v. Commonwealth*, 45 Va. App. 473, 612 S.E.2d 213 (2005). In *Kyer*, there were no signs of a forced entry, such as footprints or broken glass, and the only evidence was the open front door. *Id.* The Court stated that discovering an open door of a residence is not by itself enough to show a reasonable belief that entry is necessary into the residence because it is too common of an event. *Id.* at 482. However, the facts of *Kyer* are not analogous to the current case. In *Kyer*, the police officers suspected the defendant to be responsible for a recent burglary prior to the search. Unlike in the instant case, the police in *Kyer* did not respond to a citizen's concern or call to investigate and the door in *Kyer* was partly ajar on a warm summer night and not around a winter holiday, where it is unusual for doors to be left wide open. Based upon the aforementioned circumstances, the evidence is sufficient to permit a reasonable police officer to reach the conclusion that a burglary had taken place or that someone might be in need of help inside; therefore, the entry was objectively reasonable and justified.

## B. *Community Caretaker Exception*

The Community Caretaker Exception recognizes that "police owe 'duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis'." *Reynolds v. Commonwealth*, 9 Va. App. 430, 437, 388 S.E.2d 659 (1990).

In *Cady v. Dombrowski*, which involved evidence attained from the trunk of the defendant's car without a search warrant, the Supreme Court of the United States addressed the issue of the Community Caretaker Exception:

> Because of the extensive regulation of motor vehicles and traffic and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur

because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature.

> Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . . Often [that] noncriminal contact with automobiles will bring . . . officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband.

413 U.S. 433, 441-42, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

While a search of a motor vehicle based on the community caretaker exception might be valid to uphold a warrantless search, the Court's explicit distinction between a motor vehicle and a citizen's home show that this exception might not be sufficient when it comes to an intrusion into a private residence.

The Supreme Court of the United States reiterated this point in *South Dakota v. Opperman*, when they came to the same conclusion, stating:

> This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, *Cady v. Dombrowski*, 413 U.S. 433, 439, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973), warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell v. Lewis*, 417 U.S. 583, 589, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974); *Cady v. Dombrowski, supra*, at 439-40; *Chambers v. Maroney*, 399 U.S. 42, 48, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

However, in *Commonwealth v. Waters*, 20 Va. App. 285, 456 S.E.2d 527 (1995), the Virginia Court of Appeals noted that, while there is likely a greater standard, no language in *Cady* restricts an officer's community caretaking actions to incidents only involving automobiles. *Waters* at 531.

The Supreme Court described the community caretaking function as being "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441, that is the police officers must be acting in a protective, rather than crime-fighting, capacity. *Kyler v. Commonwealth*, 43 Va. App. 603, 601 S.E.2d 6 (2004). Officers Stultz and Mullins were not investigating the

Defendant for any reason, especially as a burglary suspect within his own home.

In *Woods v. Commonwealth*, police officers were allowed into the house by Woods after learning that they were investigating an alleged assault by him against his wife. 27 Va. App. 21, 497 S.E.2d 484 (1998). After Woods was escorted to the sheriff's office, the two officers remained in the house and went upstairs "[t]o secure the residence, make sure there was nobody else there," and subsequently found illegal narcotics in plain view upstairs. The Court held that the entry into the second floor of Woods' apartment without a warrant was not justified under the community caretaker exception because "the officers' intrusion into the room of the second floor of the home was not totally divorced from investigating criminal activity and acquiring evidence and, therefore, could not be considered a caretaking function." *Wood v. Commonwealth*, 27 Va. App. 21, 28, 497 S.E.2d 484 (1998).

In *Woods*, the officers went to the residence to investigate the alleged assault committed by Woods against his wife. The officers were invited into his house to discuss the assault and bring him to the sheriff's office; therefore, the search that resulted in finding the illegal narcotics was not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

Unlike in *Woods*, where the search was directly related to the investigation of the alleged assault, the circumstances in the current case did not concern responding to a reported crime, but to render aid; thus, such search was divorced from a violation of a criminal statute. When taking into account that it was three days before Christmas and likely cold outside and that more burglaries take place over winter break when Radford students are traditionally gone, it is justifiable for the officers to assume that a burglary may have occurred at the defendant's house and a resident may be in need of assistance inside. The officers went into the house for the purposes of seeing if anyone was in need of help inside and determining if a burglary was in progress. Moreover, they were not there to investigate any type of criminal activity on the part of the homeowner, but to determine if he was in need of assistance or was the victim of a burglary. Therefore, the warrantless entry into the house on the part of the officers was justifiable under the community caretaker exception.

### Holding

Although the search of Mahon-Haft's house was initiated without a warrant, because the Probable Cause Exigent Circumstances and/or the Community Caretaker Exception applies, the Defendant's motion to suppress the evidence obtained in the search of his house is denied.