COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


IVAN EUGENE McGUIRE
                                            OPINION BY
v.    Record No. 1860-98-2            JUDGE MARVIN F. COLE
                                         FEBRUARY 22, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                  Herbert C. Gill, Jr., Judge

          Carl C. Muzi for appellant.

          Virginia B. Theisen, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     In a bench trial, appellant, Ivan Eugene McGuire, was found

guilty of possessing cocaine.  On appeal, appellant contends (1)

the trial court erred in denying his motion to suppress; (2)

erred when admitting a certificate of analysis pertaining to

cocaine purchased by an informant three days before the charged

offense; and (3) the evidence was insufficient to sustain his

conviction.  Finding no error, we affirm.

                              FACTS

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'"  Archer v.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)

(citation omitted).

Detective Easton of the Chesterfield County police testified that a confidential informant contacted him about providing information concerning drug transactions. The informant, a former drug user, said he had completed a drug rehabilitation program and had remained "clean" until September 19, 1997, when he encountered appellant and purchased cocaine from him. The informant said he previously had purchased crack cocaine from appellant approximately 100 times. The informant described appellant as a black male in his early twenties with a goatee, a thin build, and about five-feet six-inches tall. The informant said appellant drove a brownish-silver Honda with a model year between 1990 and 1993.

On September 23, 1997, Easton arranged for the informant to make a controlled purchase of drugs at a Wendy's parking lot. Easton searched the informant and his vehicle before the transaction and found no drugs. Easton provided the informant with money to make the purchase. From his vantage point fifty yards away, Easton saw the informant meet a black male who was driving a brownish-silver Honda. The license plate of the Honda was registered to appellant. After the transaction, Easton followed the Honda to Chesterfield Village Apartments where appellant resided. The informant returned to Easton and gave the officer a substance, which tested to be cocaine.

In coordination with the police on September 26, 1997, the informant telephoned appellant at 7:25 p.m. and ordered two "8

-

balls" of crack cocaine. Appellant was to deliver the drugs at the same Wendy's parking lot where the informant had purchased cocaine on September 23, 1997. Police officers conducting surveillance of appellant's apartment observed him leave his home at 7:30 p.m., get into the Honda registered to him, and drive away.

About one minute later, police officers stopped appellant's vehicle and ordered him from the car. The officers immediately handcuffed appellant, frisked him for weapons, and asked if he had any drugs. Appellant said he did not. A drug dog at the scene alerted on both appellant and his vehicle, indicating that drugs had been present "at some time."

At about 7:35 p.m., the police officers conducted a more thorough search of appellant's person but found no controlled substances. The officers took appellant to the breezeway of a nearby apartment building and searched him once more at 7:40 p.m. Officer Nash and Sergeant Herring remained with appellant while Easton returned to supervise the search of appellant's vehicle, which was being conducted by other officers.[1]

Nash testified that, about five minutes after Easton left him with appellant, appellant appeared to be sick. Appellant was shaking uncontrollably, had the dry heaves, and was

---

[1] No drugs were found either on appellant's person or in his car.

complaining of a very upset stomach.  Herring testified that appellant's pupils were extremely dilated and unresponsive to light, that appellant's pulse rate was shallow, and that his respirations were rapid and shallow.  Testifying as a narcotics expert who previously had observed suspects who had ingested potentially lethal quantities of drugs, Herring stated that he believed appellant's condition was due to cocaine overdose.  Herring believed appellant could die if he did not receive medical treatment.  Easton returned to appellant and asked if he had ingested cocaine, but appellant denied having done so.

The officers called the rescue squad, which arrived on the scene at 8:05 p.m.  Appellant was transported to the hospital for medical treatment.  Appellant was given a fluid containing cola and charcoal to neutralize the suspected cocaine in his system, and his condition stabilized at about 9:00 p.m.  Easton then advised appellant of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  Appellant stated that the only drugs the police would find was some marijuana which he had at his apartment.

Based upon appellant's statement, the police obtained a search warrant for appellant's apartment.  In appellant's home the police found .011 grams of cocaine and some marijuana.

-

DISCUSSION

I.

A.  WARRANTLESS ARREST

Appellant contends the "search and seizure were illegal and not permissible under the circumstances."  He argues that "[t]he reasonableness of the stop became unreasonable when the officers detained [him] for 90 minutes and did not find any contraband on his person or in his automobile."

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[2] and . . . give due weight to inferences drawn from those facts by resident judges and law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

Although appellant asserts in his brief that "[t]he officers lack[ed] probable cause and articulable suspicion to continue to detain" him, we characterize his seizure as an

_____

[2] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'"  McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

-

arrest rather than a Terry stop, and analyze it under the law of warrantless arrests. "Whether [a warrantless] arrest [i]s constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . ." Beck v. Ohio, 379 U.S. 89, 91 (1964); see also United States v. Watson, 423 U.S. 411, 423 (1976); Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990).

"Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (citation omitted). See also Parker v. Commonwealth, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998); Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981).

"'In assessing an officer's probable cause for making a warrantless arrest, no less strict standards may be applied than are applicable to a magistrate's determination that an arrest warrant should issue.'" DePriest v. Commonwealth, 4 Va. App. 577, 584, 359 S.E.2d 540, 543 (1987) (quoting Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979)). The existence of probable cause is determined by examining the "totality-of-the-circumstances." See Illinois v. Gates, 462 U.S. 213, 238 (1983); Miles v. Commonwealth, 13 Va. App. 64, 68,

-

408 S.E.2d 602, 604 (1991), aff'd on reh'g en banc, 14 Va. App. 82, 414 S.E.2d 619 (1992).  In determining probable cause, we test the totality of circumstances as they would be viewed by "'police officers trained in analyzing the observed conduct for purposes of crime control.'"  DePriest, 4 Va. App. at 584, 359 S.E.2d at 543.

### B.  INFORMANT INFORMATION AND PROBABLE CAUSE

> Where the basis for concluding that probable cause exists rests upon information provided by an informer, one focus of the inquiry must be upon whether [a] magistrate could determine the informer's honesty, veracity, and basis of knowledge.  Probable cause to issue a search warrant will be found lacking where the affidavit fails to establish reasonably and objectively that the informer is to be believed.
> The United States Supreme Court has made clear that the rigid two-step analysis known as the Aguilar-Spinelli test is no longer required when deciding whether information provided by an informer establishes probable cause; rather, courts should utilize the more "fluid" totality-of-the-circumstances approach.  The Aguilar-Spinelli approach had courts analyzing separately and independently the questions whether the informer was a person worthy of belief and whether the basis for his or her knowledge was reliable.  The Gates approach, instead, requires that an issuing magistrate consider all factors and their interrelation to one another in deciding whether there is a fair probability that contraband or evidence of a crime will be found.

Boyd v. Commonwealth, 12 Va. App. 179, 186-87, 402 S.E.2d 914, 919 (1991) (citations omitted).

-

Thus,

> "[a]n informant's 'veracity,' 'reliability,'
> and 'basis of knowledge' are all highly
> relevant in determining the value of his
> report . . . [but] should [not] be
> understood as entirely separate and
> independent requirements to be rigidly
> exacted in every case . . . . Rather . . .
> they should be understood simply as closely
> intertwined issues that may usefully
> illuminate the commonsense, practical
> question whether there is 'probable cause'
> to believe that contraband or evidence is
> located in a particular place."

Id. at 187, 402 S.E.2d at 919 (quoting Gates, 462 U.S. at 230).

When reviewing an officer's determination of probable cause based upon information provided by an informant, a court should conduct a "balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending [the] informant's tip." Gates, 462 U.S. at 234. The credibility of an informer is based upon both his basis of knowledge and his reliability, and "a deficiency in one may be compensated for . . . by a strong showing as to the other." Id. at 233. In "applying the totality-of-the-circumstances analysis," the Supreme Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work." Gates, 462 U.S. at 241. When making a warrantless arrest, an officer "'may rely upon information received through an informant, rather than upon direct observations,'" so long as the officer has reasonable grounds to believe the informant's statement is true. Id. at 242 (citation

-

omitted). "Gates open[ed] the door for police officers to establish the credibility of an informer in a variety of ways . . . ." Polston v. Commonwealth, 24 Va. App. 738, 747, 485 S.E.2d 632, 636 (1997), aff'd, 255 Va. 500, 498 S.E.2d 924 (1998).

"When an officer receives from a known reliable informant a report that a felony is being committed that is so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way then the officer has probable cause to arrest." McKoy v. Commonwealth, 212 Va. 224, 227, 183 S.E.2d 153, 156 (1971). Generally, the two elements of particular significance in cases involving informant information are: (1) the reliability of the informant, and (2) the inherent reliability of the informant's information as determined by the nature and detail of the circumstances described and any independent corroboration of those circumstances. See id.; Gates, 462 U.S. at 233-35, 241-43.

## C. ANALYSIS

The police officers here possessed probable cause to arrest appellant when they stopped his vehicle. A few minutes before the stop, the informant had arranged to meet with appellant at a particular location for a cocaine transaction. Immediately after their conversation, appellant left his home in his car. The fact that appellant left his apartment apparently

-

in reaction to his conversation with the informant supported the informant's credibility.  See United States v. Miller, 925 F.2d 695, 700 (4th Cir. 1991) (holding that when police officer saw events at bus station that corroborated most of informant's tip, it was reasonable for officer to believe unverified portion of tip was correct, namely, that defendant was transporting drugs).

The informant's reliability was further supported by his prior purchase of cocaine from a man driving appellant's vehicle.  Easton saw the informant make an exchange with a black male, and the informant previously had identified appellant as a black male.  Although Easton could not see the face of the person who sold cocaine to the informant on September 23, 1997, the circumstantial evidence clearly indicated that it was appellant.

Ordinarily, an informant's controlled buy may constitute probable cause sufficient for a magistrate judge to issue a warrant.  See United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994); Tamburino v. Commonwealth, 218 Va. 821, 825, 241 S.E.2d 762, 765 (1978).  In fact, the circumstances in Tamburino are similar to the facts of this case.  In Tamburino, an informant approached the police with information about the illegal possession and distribution of drugs.  See id. at 822, 241 S.E.2d at 763.  A police officer completed an affidavit and obtained a search warrant for Tamburino's residence after witnessing a controlled purchase of drugs by the unidentified

-

informant from "'a subject.'"  See id. at 823, 241 S.E.2d at 763.  Applying the more stringent Aguilar-Spinelli test, see id. at 823-24, 241 S.E.2d at 764, the Supreme Court upheld the affidavit, holding it provided "a sufficient basis for the magistrate's finding of probable cause."  Id. at 826, 241 S.E.2d at 765.

Under the totality of the circumstances, at the time the police officers stopped appellant, they had probable cause to believe that appellant possessed cocaine.  Therefore, they were entitled to arrest him for that offense and to search him and his vehicle incident to that arrest.  See New York v. Belton, 453 U.S. 454, 460 (1981); Taylor v. Commonwealth, 28 Va. App. 638, 642, 507 S.E.2d 661, 663 (1998).  Additionally, the drug dog's alert on both appellant and his vehicle provided a further basis for the search of appellant and the car.  See Alvarez v. Commonwealth, 24 Va. App. 768, 775, 485 S.E.2d 646, 650 (1997).

Furthermore, apart from probable cause to believe appellant possessed drugs with intent to make another distribution to the informant, the prior sale of cocaine to the informant provided the police with sufficient probable cause to arrest appellant on that charge.  See Golden v. Commonwealth, 30 Va. App. 618, 625, 519 S.E.2d 378, 381 (1999) (holding that the absence of probable cause to believe person committed particular crime for which the person is arrested does not invalidate arrest if police have sufficient information to support arrest on different charge).

-

Appellant contends he was unlawfully detained after the police searched him and his vehicle and found no contraband. "[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest."  Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975).  The evidence demonstrated that, as the police were concluding their searches of appellant's person and vehicle, appellant appeared seriously ill.  Herring testified that, in his experience, appellant's condition appeared consistent with the ingestion of a potentially fatal dose of cocaine.  The officer believed appellant's life was in danger. Under the circumstances, it was reasonable for the officers to have appellant, a suspect detained upon probable cause of possessing cocaine, transported to the hospital for medical treatment.

The Fourth Amendment requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."  Gerstein, 420 U.S. at 125.  "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein."  County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).

-

Immediately after appellant's condition had stabilized, appellant was advised of his <u>Miranda</u> rights. Appellant made a statement to the police, leading to the issuance of a valid search warrant for his apartment and the discovery of drugs.[3] Considering all of the facts and circumstances, the trial court did not err in finding that appellant had suffered no violation of his Fourth Amendment rights and in denying the motion to suppress.

## II.

Before trial, the trial court ordered the Commonwealth to comply within ten days of the trial date with the requests made in appellant's motion for discovery. Appellant had requested the Commonwealth "to produce and make available for the defendant's trial or trials copies and inspection of" scientific reports either known to the Commonwealth or within its possession. The Commonwealth provided appellant with the certificate of analysis pertaining to the drugs found in appellant's apartment on September 26, 1997, but not the certificate of analysis connected with the controlled purchase of drugs by the informant on September 23, 1997.

On May 14, 1998, the trial court conducted a hearing on appellant's motion to suppress. During the suppression hearing,

---

[3] On appeal, appellant challenges neither the voluntariness of his statement nor the validity of the search warrant. Accordingly, we do not address these questions.

the Commonwealth offered into evidence as Commonwealth's Exhibit 3, the certificate of analysis pertaining to the cocaine purchased by the informant on September 23, 1997. The prosecutor stated that the purpose of Commonwealth's Exhibit 3 was to support the reliability of the informant. The trial court overruled appellant's objection that the Commonwealth had not provided Commonwealth's Exhibit 3 to him in discovery prior to the hearing. Although the evidence adduced at the suppression hearing was later introduced at trial, the trial court admitted Commonwealth's Exhibit 3 for purposes of the suppression motion only.

In Coleman v. Commonwealth, 27 Va. App. 768, 501 S.E.2d 461 (1998), the defendant filed a discovery motion requesting, among other things, scientific reports in the possession, custody, or control of the Commonwealth. The discovery order, to which the defendant agreed, permitted the defendant to inspect and copy the requested documents at the prosecutor's office during specified hours until ten days before the scheduled trial. The defendant did not avail himself of the opportunity to copy the documents at the prosecutor's office. At trial, he objected to the introduction of a certificate of analysis. See id. at 771, 501 S.E.2d at 462. On appeal, we concluded that the prosecutor "reasonably could rely upon [the agreed discovery order] as controlling all requests made in the motion for discovery, including the request for any certificate of analysis." Id. at

-

774, 501 S.E.2d at 464. The defendant, having chosen to "intermingle Code § 19.2-187 and Rule 3A:11," was bound by the terms of the discovery order for all matters of discovery. Id. at 775, 501 S.E.2d at 464.

Appellant's discovery request, which the trial court granted, required the Commonwealth to "produce and make available" certain documents and information "for [appellant's] trial," not his suppression hearing. Commonwealth's Exhibit 3 was not relevant to appellant's guilt or innocence of possessing cocaine three days later. See Hanson v. Commonwealth, 29 Va. App. 69, 78, 509 S.E.2d 543, 547 (1999) (finding that under Rule 3A:11, a defendant's statements about an unrelated crime were not "relevant," and the Commonwealth was not required to produce them). In fact, the trial court admitted Commonwealth's Exhibit 3 at the suppression hearing only for the certificate's potential to establish the reliability of the informant. As the record contains no evidence to the contrary, we presume that the trial court considered Commonwealth's Exhibit 3 only for this limited purpose. See Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc). Accordingly, the trial court did not err in admitting the certificate into evidence at the suppression hearing.

### III.

In challenging the sufficiency of the evidence, appellant contends only that if the trial court had granted the motion to

-

suppress, the evidence would not have proven that he possessed the drugs.  As noted above, however, the trial court did not err in denying the motion to suppress.  The evidence was uncontroverted that appellant told the police they would find drugs in his apartment, which the officers subsequently did. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of the charged offense.

For the foregoing reasons, appellant's conviction is affirmed.

<u>Affirmed</u>.