COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia


JIMMY HAROLD SMITH

                                                              OPINION BY
v.        Record No. 1534-09-1                    JUDGE JAMES W. HALEY, JR.
                                                              AUGUST 3, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Dianne G. Ringer (Bierowicz & Ringer, P.C., on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


I.

Jimmy Harold Smith (hereinafter "appellant") appeals his conviction for possession of

cocaine in violation of Code § 18.2-250.  The only question presented is whether the trial court

erred in denying appellant's pretrial motion to suppress the drug evidence.  More specifically,

appellant argues that the police discovered the suspected cocaine as a result of entering his

residence without a search warrant and that the trial court incorrectly applied the exigent

circumstances exception to the Fourth Amendment's requirement that police secure a warrant

before entering a residence.  Finding that the trial court did not err in applying the exigent

circumstances exception, we affirm appellant's conviction.

Facts

Officer Christopher Smith of the Portsmouth police responded to an anonymous call early on the morning of October 31, 2008. Whoever made the call said that "a white male named Jimmy Smith and a black male named Bobby" were at appellant's residence, 2102-A Rodman Avenue in Portsmouth. Officer Smith testified: "The caller stated that Bobby was Mr. Smith's drug dealer and giving Jimmy narcotics." Officer Smith arrived at appellant's door very soon after receiving the call. The call came at 2:02 a.m. Officer Smith received the message from a police dispatcher two minutes later, and by 2:10 a.m., he had parked on the street in front of appellant's residence, which he described as a detached garage that had been converted into an apartment.

Officer Smith knocked on the front door. From inside, a voice answered, "Who is it?" Officer Smith replied by identifying himself as a policeman. Appellant partially opened his front door. Officer Smith testified that, through the doorway, he observed a black male "jump up from the couch and run towards the back of the apartment with something in his hand. I couldn't tell what it was." Later in his testimony, Officer Smith stated that the object was white. Next, Officer Smith "kind of pushed [his] way into the door and ran to the back where the black male was running. [He] placed the black male in investigative detention in handcuffs."

> Q: Why did you do that? Why did you handcuff him?
>
> A: Due to the call that I received, and when I made this visual consensual contact, and when I seen this gentleman run towards the back, I felt he may be trying to destroy evidence.

By the time Officer Smith apprehended the male, they had both run through the living room into a bedroom toward the back of appellant's apartment. There, "in plain view," Smith saw a wood and metal "smoking device" on top of the bed. When Officer Smith led the male

back through the living room, he noticed several glass smoking devices, and Officer Smith seized these items. Another policeman later took them to the state crime lab in Norfolk. A forensic scientist issued a certificate of analysis, which was offered into evidence at appellant's trial, stating that scientific testing had detected the presence of cocaine residue in one of the devices. Appellant made a pretrial motion to suppress any evidence of the smoking devices and accompanying certificate, which the trial court denied. This appeal followed.

III.

Analysis

"In our review of the denial of the motion to suppress, 'the burden [is] upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Lester v. Commonwealth, 30 Va. App. 495, 502, 518 S.E.2d 318, 321 (1999) (quoting Lewis v. Commonwealth, 26 Va. App. 113, 115, 493 S.E.2d 397, 398 (1997)). "However, we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999). "[W]e hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (explaining standard of appellate review of trial court determinations of reasonable suspicion and probable cause).

"The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be

- 3 -

crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). A warrantless entry is reasonable within the meaning of the Fourth Amendment when police have probable cause together with the required exigent circumstances. Welsh v. Wisconsin, 466 U.S. 740, 749 (1984); West v. Commonwealth, 54 Va. App. 345, 353, 678 S.E.2d 836, 840 (2009); Shannon v. Commonwealth, 18 Va. App. 31, 33, 441 S.E.2d 225, 227 (1994). One category of exigent circumstances that, together with probable cause, will justify a warrantless search of a house applies when "evidence would be lost, destroyed or removed during the time required to obtain a search warrant." Mincey v. Arizona, 437 U.S. 385, 394 (1978).

Exigent Circumstances

"Where there are exigent circumstances in which a reasonable police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 853 (1981). At oral argument, counsel for appellant agreed, given that drugs are easily destroyed, such an exigency existed if the police officer reasonably believed that the object that he saw in the hand of the man in appellant's apartment was an illegal substance. Appellant argues that as a matter of law it was unreasonable for the officer to believe that this object was an illegal substance, given that the officer failed to precisely identify the object. We disagree.

"The police need not, as appellants suggest, produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe." United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991). It is true that the officer could not positively identify the object in the male's hand. Nevertheless, we find that an objective officer in his position could reasonably believe, given the facts available to him at the time of the search, that the object was a controlled substance. Cf. Verez v. Commonwealth, 230 Va. 405, 337 S.E.2d 749 (1985).

- 4 -

Unlike this case, the police in Verez made their entry into the defendant's motel room based on information provided by known informants. Id. at 407-09, 337 S.E.2d at 751-52. After the informants had seen the cocaine, they signaled to police who entered the defendant's hotel room without a warrant. The Supreme Court easily concluded that the police had probable cause, id. at 409, 337 S.E.2d at 752, and devoted most of their analysis to the separate question of whether the police had the required exigent circumstances to make a warrantless entry into the motel room. The Court concluded that the warrantless entry was justified in Verez, in part because of what they considered "a high probability that the evidence, if present in the room, would be quickly destroyed." Id. at 411, 337 S.E.2d at 753; see also Cherry v. Commonwealth, 44 Va. App. 347, 363, 605 S.E.2d 297, 304-05 (2004) (finding exigent circumstances supported a warrantless entry to prevent destruction of suspected marijuana where police smelled marijuana after knocking on the door to investigate an unrelated offense and a woman who answered the door called toward the back of the house to announce police arrival and police heard "significant movement" behind a sheet). In this case, the officer observed a male, matching the description of "Bobby," running toward the back of the apartment with something white in his hand, apparently as soon as he became aware of the police presence. Given the anonymous tip regarding a possible drug offense, the white color of the object was suspicious. So was the male's flight on seeing the police. Cf. United States v. Elkins, 300 F.3d 638, 657 (6th Cir. 2002) (finding "an objective basis for fearing the destruction of relevant evidence," when the person who exited the building fled immediately back inside when he became "aware of the close presence of police"). We cannot agree that under these facts, the officer's belief that the male was about to destroy evidence was unreasonable as a matter of law.

Probable Cause

Applying the exigent circumstances exception also necessarily embraces the separate, but closely related, question of probable cause. See Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995) ("Exigent circumstances justify a warrantless entry . . . *only* when the police have probable cause to obtain a search warrant." (emphasis added)). Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). We further note that it is possible for a police officer to develop probable cause at the same time that exigent circumstances arise. See e.g. Robinson v. Commonwealth, 273 Va. 26, 43, 639 S.E.2d 217, 227 (2007) ("[T]he 'development of probable cause and the creation of exigencies were virtually contemporaneous.'" (quoting Robinson v. Commonwealth, 47 Va. App. 533, 561-62, 625 S.E.2d 651, 665 (2006) (*en banc*))). According to the Commonwealth, two circumstances, taken together, generated probable cause that a drug offense was being committed *and* the reasonable belief that evidence would be lost or destroyed during the time required to obtain a search warrant. These circumstances were 1) the tip from the anonymous informant; and 2) the police officer's observation of the male running toward the back of appellant's apartment with an unidentified, white object in his hand.

"Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Adams v. Williams, 407 U.S. 143, 147 (1972). "Generally, the two elements of particular significance in cases involving informant information

are: (1) the reliability of the informant, and (2) the inherent reliability of the informant's information as determined by the nature and detail of the circumstances described and any independent corroboration of those circumstances." McGuire v. Commonwealth, 31 Va. App. 584, 595, 525 S.E.2d 43, 49 (2000). These factors are:

> better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.
>
> If, for example, a particular informant is known for the *unusual* reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

Illinois v. Gates, 462 U.S. 213, 233 (1983).

The tip in this case was anonymous. Accordingly, nothing about the "reliability of the informant" encourages a finding of probable cause. Compare Askew v. Commonwealth, 38 Va. App. 718, 724, 568 S.E.2d 403, 406 (2002) (finding probable cause to arrest and noting that informant had an "undisputed history of reliability"), with Jackson v. Commonwealth, 267 Va. 666, 676, 594 S.E.2d 595, 600 (2004) (reversing conviction and noting "'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" (quoting Florida v. J.L., 529 U.S. 266, 269 (2000))). But under the "totality-of-the-circumstances" approach described by the Court in Gates, even an anonymous tip can provide probable cause, see e.g. Alabama v. White, 496 U.S. 325 (1990), if other facts and circumstances sufficiently compensate for the lack of information about the informant himself. "[T]he additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or . . . were in the process of committing the felony." Whiteley v. Warden,

401 U.S. 560, 567 (1971), overruled in part on other grounds Arizona v. Evans, 514 U.S. 1, 14 (1995).

Appellant argues, and we agree, that not only was the tip in this case anonymous, but the caller, whoever he was, failed to explain how he obtained his information. If the anonymous tip were the *only* suspicious circumstance known to the officer, we might indeed be compelled to reverse appellant's conviction. Cf. Byrd v. Commonwealth, 50 Va. App. 542, 552, 651 S.E.2d 414, 419 (2007) (reversing the defendant's conviction because a tip to police by a *known* informant failed to explain how informant learned of defendant's criminal activity); Askew, 38 Va. App. at 720, 568 S.E.2d at 404 (probable cause existed when informant told police he personally observed defendant possessing cocaine); McGuire, 31 Va. App. at 596, 525 S.E.2d at 49 (tip provided probable cause to arrest given that detective saw informant make "controlled buy" from person inside defendant's vehicle); Jefferson v. Commonwealth, 27 Va. App. 1, 13-14, 497 S.E.2d 474, 480 (1998) (multiple tips gave police probable cause when two informants both stated that they personally observed defendant selling cocaine); Alexander, 19 Va. App. at 674-75, 454 S.E.2d at 41 (reversing conviction where police made warrantless entry into defendant's hotel room in response to an anonymous call alleging that a woman was held hostage inside and caller did not explain basis for the allegation); Hill v. Commonwealth, 18 Va. App. 1, 441 S.E.2d 50 (1994) (tip provided probable cause to enter house when neighbor reported possible break-in based on observation of door left open and neighbor knew owner was out of town).

But to reverse appellant's conviction because the tip alone was deficient in probable cause would violate the principle that we evaluate the reasonableness of police action based on the facts known by the police at the time of the seizure. Wells v. Commonwealth, 6 Va. App. 541, 550, 371 S.E.2d 19, 23-24 (1988) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)).

Appellant does not argue that any seizure took place before he voluntarily opened his door to the police. Thus, at the time relevant to our review, the information available to the police included *both* the anonymous tip *and* the officer's observations through appellant's open doorway. The officer saw an individual fitting one of the descriptions provided by the informant getting off the sofa and running toward the back of appellant's apartment with something white in his hand. We agree with the Commonwealth that, taken together, these circumstances provided probable cause that a drug offense was being committed.

To understand why, it is useful to review the reasons courts tend to require some independent corroboration of an anonymous tip before such a tip will justify a search or seizure. On this point, the opinions in White are instructive, though the question there was whether the tip and corroborating details met the less demanding standard of reasonable suspicion. In White, the police received an anonymous tip that the defendant would be leaving her apartment in a specific vehicle and at a specific time. White, 496 U.S. at 327. The tip also predicted that the defendant would travel to a specific motel and that she would be carrying cocaine in a brown attaché case. Id. Before stopping her car, police officers corroborated the tipster's fairly detailed description of the car ("a brown Plymouth station wagon with the right taillight lens broken"). Id. They also witnessed her drive the most direct route toward the motel mentioned in the tip, and they stopped her car just before she arrived at that motel. Id. In holding that the tip and corroborating details justified the stop of the car, the majority opinion emphasized that the tip "'contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" Id. at 332 (quoting Gates, 462 U.S. at 245).

> The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What

was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information -- a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.

Id. The dissenting justices argued that the police failed to sufficiently corroborate the details of the anonymous tip, and stressed that the tipster was wrong about one thing; the defendant was not carrying a brown attaché case. Id. at 333 (Stevens, J., dissenting). The dissent also reasoned that predictions regarding the time a person leaves her home, even when independently corroborated by the police, are not particularly useful indicators of criminal behavior.

Millions of people leave their apartments at about the same time every day carrying an attaché case and heading for a destination known to their neighbors. Usually, however, the neighbors do not know what the briefcase contains. . . . Anybody with enough knowledge about a given person to make her the target of a prank, or to harbor a grudge against her, will certainly be able to formulate a tip about her like the one predicting Vanessa White's excursion.

Id. See also J.L., 529 U.S. at 271 ("Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified White as a 'close case.'"). In short, both opinions agreed on the need for some corroboration. The argument in White – and indeed the argument in many anonymous tip cases – is about whether the police corroboration of the events and circumstances earlier predicted by the tipster was sufficient to identify the tip as reliable, and to diminish, within reason, the possibility that the tip came from a malicious, mistaken or dishonest tipster, in order to indulge a grudge or play a cruel joke.

The tipster in this case predicted that a white male, the appellant, and a black male called "Bobby" would be in the appellant's apartment and that "Bobby" was the appellant's drug dealer, and was "giving Jimmy narcotics." Although the tipster did not predict that "Bobby" would run at the approach of the police officer while carrying something white in his hands, we believe the officer's observations of this behavior has a significance to the reasonableness of the officer's actions similar to the police corroboration of the tipster's predictions of the defendant's future movements in White. That is, a dishonest neighbor with a grudge against the appellant could easily have called in a tip similar to the one received by Officer Smith. And the fact that the officer observed a black male and a white male in the apartment could not, in itself, establish that the tip was sufficiently reliable to support a search or seizure. See J.L., 529 U.S. at 272 ("An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity."). But a vengeful neighbor who meant to harass or annoy the appellant by making false or unfounded allegations could not possibly control the way "Bobby" would react to the arrival of the police. Under these circumstances, the male's reaction was more than extremely suspicious. Indeed, when viewed in the light most favorable to the Commonwealth, we hold that the officer's observations through the appellant's open door after receiving the anonymous tip amounted to probable cause that a drug offense was being committed.

IV.

Conclusion

For the reasons above, we hold that the trial court did not err in denying Smith's pretrial motion to suppress evidence.  His conviction for possession of cocaine is affirmed.

Affirmed.