COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia


LYNN WINSTON WHEELER

                                              MEMORANDUM OPINION* BY
v.      Record No. 1469-13-3                  JUDGE GLEN A. HUFF
                                              DECEMBER 2, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

M. Kevin Bailey (M. Kevin Bailey, PLLC, on briefs), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Lynn Winston Wheeler ("appellant") appeals his conviction of possession of a Schedule I

or II controlled substance, in violation of Code § 18.2-250.  Following a bench trial in the Circuit

Court of the City of Lynchburg ("trial court"), appellant was sentenced to three years'

incarceration in the Department of Corrections.  On appeal, appellant argues that the trial court

erred by "denying [appellant's] motion to suppress the evidence resulting from the warrantless

search of his residence . . . because there were no exigent circumstances permitting a warrantless

search."  For the following reasons, this Court affirms the ruling of the trial court.

I.  BACKGROUND

On appeal from a trial court's denial of a motion to suppress, this Court reviews the

evidence "in the light most favorable to the Commonwealth, giving it the benefit of any

reasonable inferences."  Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2007) (*en banc*). This standard requires us to "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Marlbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008). "In doing so, we 'consider facts presented both at the suppression hearing and at trial.'" Tizon v. Commonwealth, 60 Va. App. 1, 15, 723 S.E.2d 260, 267 (2012) (quoting Morris v. City of Va. Beach, 58 Va. App. 173, 176, 707 S.E.2d 479, 480 (2011)). So viewed, the evidence is as follows.

At 11:38 p.m. on July 9, 2012, Officers D.C. Dubie ("Dubie") and Nicolas R. Barb ("Barb") of the Lynchburg Police Department were patrolling in the area of Loraine Street when a call came over their radios that a "shooting victim" had arrived at Lynchburg General Hospital. The dispatcher informed the officers that the shooting occurred on Loraine Street. The officers did not have a specific address, but went to the 2700 block of Loraine Street because, according to Dubie, "that's where . . . Loraine Street starts."

As the officers were walking down the sidewalk, they noticed "a large wet patch on the walk path leading up to 2703 Loraine Street." The wet patch had a "strong odor of bleach," which was "unusual" because "it had rained earlier in the night." Upon closer examination, the officers found "blood droplets located next to the wet patch," which led to the entrance of the residence at 2703 Loraine Street.

The officers approached the residence and knocked on the front door. Jewel Allen ("Allen") and Clifton Taylor ("Taylor") answered the door and stepped outside onto the porch to speak with the officers. During the conversation, Allen informed the officers that earlier in the night she was asleep in her bedroom with her children when her housemate, appellant, woke her up and told her that he had been shot. Allen gave appellant a towel and told him to go to the hospital. Dubie asked Allen why she did not call the police, and Allen responded that "she didn't think anything about it because [appellant] was already on the way to the hospital." Dubie testified that "Allen and . . .

- 2 -

Taylor weren't really giving us much information about if they knew anything about what was going on."

During the conversation, Allen's neighbor, Patricia Vaughan ("Vaughan") walked onto the porch and told the officers that she heard "a loud pop sometime during the night but believed it had been a trash can falling over." Dubie testified that while he was on the porch he "could hear several voices inside the residence," but he could not ascertain the location or identity of the individuals who were speaking.[1] Consequently, Dubie told Allen that the residence was a "crime scene," and the officers executed "a protective sweep . . . due to the nature of the call [and] not knowing who was inside [or] if the suspect was still inside."

The officers were inside the residence for a "couple of minutes" as they "cleared" each room "in an attempt to locate any person that [could] harm [them]." While inside, the officers observed, in plain sight, several plastic bags containing what was later determined to be cocaine, as well as green plant material that was later determined to be marijuana. The officers exited the property and applied for a search warrant based on the items they observed as they were sweeping the residence.

Approximately three hours later, the officers obtained a warrant and reentered the house. While executing the warrant, the officers recovered a green duffle bag from a closet on the ground floor of the house. The duffle bag contained male clothing, a corner of a plastic bag containing what was later determined to be cocaine, and paperwork from the Virginia Department of Motor Vehicles bearing appellant's name.

Prior to trial, appellant moved to suppress the evidence obtained as a result of the officers' warrantless search of the residence. At the conclusion of the motion to suppress, the trial court found that

---

[1] Barb, who was standing behind Dubie, testified that he did not hear any voices coming from inside the house.

> [i]t's not in dispute that [appellant] had been shot . . . [but] there's really no evidence . . . of when he was shot . . . . The fact of the matter is [Allen] had cleaned up blood from a crime scene and the evidence is there was blood on her porch, on the walkway leading up to her home and that [appellant] had been in her home. That is a crime scene . . . .

>     \*      \*      \*      \*      \*      \*      \*

> [Dubie] has testified that he observed the wet spot on the sidewalk leading up to this residence . . . . They went into this residence where clearly there was blood and bleach located. There were blood droplets still visible on the sidewalk. Not only that, there's testimony from [Dubie] that the occupants were less than forthcoming about information and they hadn't notified the authorities . . . . Seems a little bizarre that an occupant cleans up blood from their sidewalk with bleach, knows that a person has been shot on their premises and never calls the authority . . . . So whether there's additional blood . . . that blood is relevant evidence in a gunshot case and there's a potential that there's additional evidence in that home that certainly the officers are concerned about being cleaned up . . . . Those individuals [still located within the residence] could be doing something with evidence . . . . Needless to say, [Allen's] activity is more than suspicious and it's certainly not reasonable . . . .

After additional legal analysis, the trial court denied appellant's motion to suppress, and the case proceeded directly to trial.

Following trial, the trial court convicted appellant of possession of a Schedule I or II controlled substance, in violation of Code § 18.2-250, and sentenced appellant to three years' incarceration in the Department of Corrections. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred by denying appellant's motion to suppress. Specifically, appellant argues that there were no exigent circumstances to justify the officers' warrantless entry into the residence.

When reviewing a trial court's denial of a motion to suppress, "[t]he burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." McCain v.

Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "While [this Court is] bound to review *de novo* the ultimate questions of law, we 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Woodson v. Commonwealth, 25 Va. App. 621, 625, 491 S.E.2d 743, 745 (1997) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). Additionally, this Court "'give[s] due weight to a trial court's finding that the officer was credible and the inference was reasonable.'" Id.

"The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "'Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals.'" Ross v. Commonwealth, 61 Va. App. 752, 759, 739 S.E.2d 910, 913 (2013) (quoting Kyer v. Commonwealth, 45 Va. App. 473, 480-81, 612 S.E.2d 213, 217 (2005) (*en banc*)). Indeed, "'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Id. (quoting Welsh v. Wisconsin, 466 U.S. 740, 748 (1984)).

Generally, "'[w]arrantless entries into dwellings, followed by searches, seizures, and arrests . . . are presumed to be unreasonable . . . .'" Cherry v. Commonwealth, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004) (quoting Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752-53 (1985)). "'But even on this topic the Fourth Amendment's text endorses no absolutes. It instead condemns only "unreasonable" searches and seizures.'" Ross, 61 Va. App. at 759, 739 S.E.2d at 913 (quoting Kyer, 45 Va. App. at 480, 612 S.E.2d at 217). Accordingly, the Fourth Amendment's "warrant requirement is subject to certain reasonable exceptions." Kentucky v. King, 131 S. Ct. 1849, 1856 (2011).

"One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Washington v. Commonwealth, 60 Va. App. 427, 436, 728 S.E.2d 521, 526 (2012) (quoting King, 131 S. Ct. at 1856).

> Such exigencies often arise in one of two scenarios: (i) where the police have probable cause to enter or search a location or thing, but exigent circumstances excuse the need to obtain a warrant, and (ii) where no probable cause exists, but a warrantless entry or search is justified because of an emergency.

Ross, 61 Va. App. at 760, 739 S.E.2d 914; see also Verez, 230 Va. at 410-11, 337 S.E.2d at 753 (listing ten categories of "exigent circumstances which might justify a warrantless entry").

The first scenario, "the exigent circumstance exception[,] 'necessarily embraces the separate, but closely related, question of probable cause.'" Ross, 61 Va. App. at 760, 739 S.E.2d at 914 (quoting Smith v. Commonwealth, 56 Va. App. 592, 600, 696 S.E.2d 211, 215 (2010)). In these cases, the "police have probable cause to enter or search *and* exigent circumstances justify doing so without first obtaining a warrant." Id.

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed," Mazza v. Commonwealth, 16 Va. App. 907, 911, 434 S.E.2d 339, 342 (1993), or when "there is a fair probability that contraband *or evidence of a crime* will be found in a particular place," Jones v. Commonwealth, 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (emphasis added).

When determining if probable cause exists, this Court "will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Mazza, 16 Va. App. at 911, 434 S.E.2d at 342. Indeed, probable cause is

"evaluate[d] . . . under a standard of objective reasonableness." Cherry, 44 Va. App. at 357, 605 S.E.2d at 302. Police "officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981).

In the present case, after learning that there had been a shooting on Loraine Street, the officers observed a large wet spot that smelled like bleach next to a blood trail that led to the entrance of the residence at 2703 Loraine Street. Then, Allen informed the officers that appellant, who had been shot, was inside her house earlier that night. Under these circumstances, a reasonable police officer could believe that there was a "fair probability" that appellant's blood was within the residence. Jones, 277 Va. at 178, 670 S.E.2d at 731. The question, therefore, becomes whether appellant's blood is "evidence of a crime," as is required by the exigent circumstances exception. Id.

"Evidence is 'something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . .'" In re Neal, 44 Va. App. 89, 90, 603 S.E.2d 170, 170 (2004) (quoting Black's Law Dictionary 595 (8th ed. 2004)). Appellant's blood tends to prove that appellant was, in fact, shot. Moreover, the presence and location of the blood within the residence could either corroborate or impeach Allen's statements to the officers regarding the shooting. As such, it is evidence of a crime.

Additionally, "[d]epending on the type of stain and the circumstances, a number of different conclusions can be reached [from blood spatter evidence], such as the cause of the stain, its point of origin, and the direction in which the blood droplets were going at impact." Smith v. Commonwealth, 265 Va. 250, 252, 576 S.E.2d 465, 467 (2003). Therefore, the

presence or absence of any spatter stains in the residence would indicate whether appellant was shot within or outside of the residence – a fact not know by the officers when they made entry. Accordingly, in the present case, appellant's blood was evidence of a crime, and the officers had probable cause to believe that it was within the residence.

But probable cause that evidence of a crime was within the residence is not, by itself, sufficient to justify a warrantless search of the residence. This Court must next determine whether any "exigent circumstances excuse[d] the need to obtain a warrant." Ross, 61 Va. App. at 760, 739 S.E.2d at 914.

"One category of exigent circumstances that, together with probable cause, will justify a warrantless search of a house applies when 'evidence would be lost, destroyed or removed during the time required to obtain a search warrant.'" Smith, 56 Va. App. at 598, 696 S.E.2d at 214 (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)). When determining whether an exigent circumstance exists, "'[t]he police need not . . . produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe.'" Id. at 599, 696 S.E.2d at 214 (quoting United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991)).

In the present case, this Court concludes that an objective officer could reasonably believe that the biological evidence within the house "would be . . . destroyed . . . during the time required to obtain a search warrant." Id. at 598, 696 S.E.2d at 214. Some biological evidence, such as blood, saliva, or DNA, is particularly susceptible to destruction, and this Court has acknowledged that fear of its destruction could create an exigent circumstance. West v. Commonwealth, 54 Va. App. 345, 356, 678 S.E.2d 836, 841 (2009) (noting "appellant could easily destroy the biological evidence of his guilt while the police proceeded to get a search or arrest warrant").

In the present case, not only were the officers aware that people were awake inside the house, where they had probable cause to believe there was biological evidence of a crime, but they were also aware that some of the blood evidence had *already* been destroyed with bleach on the sidewalk. Additionally, as the trial court found, Allen's behavior was "more than suspicious" in that she failed to call the police upon learning that appellant was shot and she was "less than forthcoming" when talking with the officers.

Due to the readily disposable nature of the biological evidence, the fact that some of this evidence had already been destroyed, and Allen's suspicious behavior, "an objective officer could reasonably believe" that the biological evidence within the house would be destroyed if the officers waited to obtain a warrant. Smith, 56 Va. App. at 599, 696 S.E.2d at 214; see also Cherry, 44 Va. App. at 361-62, 605 S.E.2d at 304 (noting it was reasonable for an officer to conclude once the defendants knew of his presence they would try to destroy the marijuana before he came back with a warrant).[2]

Therefore, this Court holds that the officers had probable cause to believe that evidence of a crime was within the residence and that such evidence would be destroyed if they waited to obtain a warrant before entering the premises.

---

[2] Appellant argues on brief that the officers entered the house because Dubie heard voices inside while talking to Allen, not because they believed the blood spatter evidence would be destroyed. "Examining the subjective intent of the officer," however, "is fundamentally inconsistent with our Fourth Amendment jurisprudence . . . because the Fourth Amendment regulates conduct rather than thoughts." Washington, 60 Va. App. at 435, 728 S.E.2d at 525 (citations and internal quotations marks omitted). Phrased differently, this Court does "not consider allegations of the officer's real motive for his actions if they otherwise satisfy the objective reasonableness standard adopted by the Fourth Amendment. An officer's ulterior motive, whatever it might be, does not nullify an objectively valid legal justification for his actions." Thomas v. Commonwealth, 57 Va. App. 267, 274, 701 S.E.2d 87, 91 (2010) (citations and internal quotations marks omitted); see also Whren v. United States, 517 U.S. 806, 813 (1996) (holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

## III.  CONCLUSION

Accordingly, this Court affirms the trial court's decision to deny appellant's motion to suppress because the officers had probable cause to believe evidence of a crime was within the home, and exigent circumstances justified dispensing with the warrant requirement.

<u>Affirmed.</u>